# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| VICTOR ROSSI, ) | |
| ) | |
| Plaintiff, ) | Case No. 3:11-cv-01045 |
| ) | Judge Nixon |
| v. ) | Magistrate Judge Brown |
| ) | |
| SUNTRUST MORTGAGE, INC., ) | JURY DEMAND |
| ) | |
| Defendant. ) | |

## ORDER

Pending before the Court is Plaintiff Victor Rossi's Objection to Removal & Motion to Remand ("Motion to Remand") (Doc. No. 7), to which Defendant SunTrust Mortgage, Inc. filed a Response in Opposition (Doc. No. 16). Defendant has also filed a Motion to Dismiss (Doc. No. 4), along with a Memorandum in Support (Doc. No. 5). Plaintiff filed a Response to the Motion to Dismiss (Doc. No. 12), to which Defendant filed a Reply (Doc. No. 15). For the following reasons, Plaintiff's Motion to Remand is **DENIED** and Defendant's Motion to Dismiss is **GRANTED**.

### I. BACKGROUND[1]

Plaintiff is a resident of Murfreesboro, Rutherford County, Tennessee. Defendant is a corporation incorporated in Virginia and authorized to do business in Tennessee.

In January of 2007, Plaintiff entered into a mortgage agreement with Defendant to finance the purchase of his home in Nashville, Tennessee. The purchase price for the property

---
[1]All facts are taken from Plaintiff's Complaint (Doc. No. 1-1) unless otherwise noted.

1

was $215,000, and the parties agreed to finance the purchase through a first mortgage of $172,000 and a second mortgage of $43,000. A Deed of Trust was filed with the Registrar of Deeds. In the event that Plaintiff defaulted on the loan, Defendant had the right to accelerate the payment, but Section 19 of the Deed gave Plaintiff the right to reinstate the loan by curing the delinquency five days before the sale of the property.

Plaintiff became unable to make timely payments on the mortgage sometime prior to April of 2010. Plaintiff received a notice of Defendant's intent to foreclose on the property in July of 2010. Plaintiff was successful in obtaining a modification of the two loans. Plaintiff again began to have difficulty paying his mortgage by April of 2011. Plaintiff received notice that a foreclosure was scheduled for July 21, 2011. On July 14, 2011, Plaintiff entered a branch office of Defendant[1] and paid the delinquent balance as represented to him by a representative of Defendant. However, Defendant later refused to accept the funds to adequately cure the alleged delinquency. Defendant foreclosed on Plaintiff's property and sold its interest in the property to Federal National Mortgage Association, which then sought possession of the property.

Plaintiff filed a Complaint in the Circuit Court of Rutherford County on September 30, 2011, alleging that the foreclosure and the surrounding business dealings violated Tennessee law. (Doc. No. 1-1.) Plaintiff claims that Defendant violated Tennessee Code Annotated §§ 35-1-111, *et seq.*, §§ 35-5-114, *et seq.*, and §§ 35-5-117, *et seq.* (*Id.* ¶¶ 16-18.) Other causes of action included in the Complaint are ambiguous. The Complaint does refer to the implied covenant of good faith and fair dealing (*id.* ¶ 21d) and alleges that Defendant's actions were deceptive in violation the Tennessee Consumer Protection Act (TCPA), Tennessee Code Annotated §§ 47-18-

---

[1] The Complaint does not state where that branch is located; the Court assumes it is located in Tennessee, as Plaintiff is a resident of Tennessee and the disputed property is located there.

101, *et seq.* (*id.* ¶ 23). Plaintiff generally alleges that Defendant lacked standing to foreclose on Plaintiff's property, knowingly and intentionally refused to accept funds from Plaintiff to cure the alleged breach of the mortgage loan, failed to reasonably communicate with Plaintiff to avoid foreclosure, and failed to properly supervise and direct its law firm and agencies in the process of curing the deficiency and stopping the foreclosure sale. (*Id.* ¶¶ 21b-21f.) The Court will characterize Plaintiff's claims as violations of the enumerated Tennessee statutes, the TCPA, and the implied covenant of good faith and fair dealing.

Defendant removed the action to this Court on November 1, 2011, asserting that jurisdiction is proper due to the parties' diversity of citizenship under 28 U.S.C. § 1332. (Doc. No. 1 at 2.) Defendant then filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 4) and a supporting Memorandum (Doc. No. 5) on November 8, 2011. Defendant also filed copies of the Note and Deed of Trust for the disputed property. (Doc. Nos. 4-1 & 4-2.) Plaintiff filed a Response to the Motion to Dismiss on November 21, 2011 (Doc. No. 12), to which Defendant filed a Reply on December 5, 2011 (Doc. No. 15).

Plaintiff filed an Objection to Removal & Motion to Remand on November 14, 2011. (Doc. No. 7.) Defendant filed a Response in Opposition on December 7, 2011. (Doc. No. 16.)

## II. MOTION TO REMAND

### A. *Legal Standard*

A case must be remanded "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). A defendant seeking to remove a case to federal court bears the burden of proving that jurisdiction is proper, and all doubts as to the propriety of removal are to be resolved in favor of remand. *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 948-49 (6th Cir. 1994).

*B. Analysis*

Under 18 U.S.C. § 1332, a federal court has jurisdiction over civil actions when there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000. Generally, the amount of damages sought by a plaintiff will determine the amount in controversy, but where the amount is not immediately apparent, a defendant satisfies its burden by proving that the amount in controversy "more likely than not" exceeds $75,000. *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993) (overruled on other grounds by *Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010)).

Plaintiff admits in his Motion that diversity of citizenship exists between the parties. (Doc. No. 7 at 1.) Plaintiff disputes, however, that the amount-in-controversy requirement is met. (*Id.*) Plaintiff argues that the net worth of the property to Plaintiff is no more than $5,000, because the mortgages total $215,000 and Plaintiff estimates the value of the property to be $220,000. (*Id.*) Plaintiff also asserts that he will be withdrawing his TCPA claim, therefore removing the possibility that his damages could exceed $75,000. (*Id.* at 2.) However, Plaintiff's assertion that he will voluntarily dismiss his TCPA claim is irrelevant, as the amount in controversy is determined based on the claims at the time of removal. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 392-94 (1938). The Court will therefore examine Plaintiff's Complaint at the time of removal to determine if the amount-in-controversy requirement is satisfied.

A court in this Circuit recently observed that federal courts have used two different approaches to determine the amount in controversy in wrongful foreclosure cases. *Hanley v. OneWest Bank, FSB*, 2011 WL 4905511, at *3 (E.D. Mich. Oct. 14, 2011). The majority of courts have held that the amount is determined by the fair market value of the property, while

4

other courts have used the amount owed on the mortgage loan. *Id.* (citations omitted). The court in *Hanley* declined to determine which approach is more appropriate because the facts of the case established that the requirement was satisfied under either test. *Id.*

Similarly, in the instant case, the amount-in-controversy requirement is satisfied under either approach. Plaintiff's Complaint alleges that his property had an approximate value of $220,000 at the time it was foreclosed. (Doc. No. 1-1 ¶ 22.) The property was sold at a foreclosure sale for $175,007.13. (Doc. No. 16-1 ¶ 7); *see Hanley*, 2011 WL 4905511, at *3 ("The fair market value may be determined by the price at which the property is sold at the sheriff's sale."). Further, at the time of the foreclosure sale, Plaintiff owed $170,884.70 on the first mortgage alone. (Doc. No. 16-1 ¶ 6.) The Court need not, therefore, determine which valuation approach to apply. Defendant has met its burden of establishing that the amount in controversy exceeds $75,000. Accordingly, Plaintiff's Motion to Remand is **DENIED**.

### III. MOTION TO DISMISS UNDER RULE 12(B)(6)

#### A. Legal Standard

To withstand a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a complaint must allege "[e]nough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Supreme Court recently clarified the *Twombly* standard, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009). Plausibility requires "[m]ore than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts "'[m]erely consistent with' defendant's liability . . . 'stops short of the line between possibility and plausibility' of entitlement to relief." *Id.* (quoting *Twombly,* 550 U.S. at 546).

5

When ruling on a defendant's motion to dismiss, the Court must "[c]onstrue the complaint liberally in the Plaintiffs' favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir. 1994). The Court must allow "[a] well-pleaded complaint [to] proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly,* 550 U.S. at 556.

Additionally, while the Court will not generally consider matters outside of the pleadings when ruling on a motion to dismiss, "the court may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Wyser-Pratte Mgmt. Co., Inc. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005) (citing *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360-61 (6th Cir. 2001); *New England Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir.2003)).

*B. Analysis*

Defendant moves to dismiss Plaintiff's Complaint on the following grounds: (1) the Complaint fails to comply with the relevant pleading standards; (2) Defendant rightfully rejected Plaintiff's alleged tender of payment because it did not constitute effective tender of payment under the Tennessee Uniform Commercial Code (UCC); (3) Plaintiff's TCPA claim fails because the TCPA does not apply to foreclosure actions; and (4) the Complaint fails to plead a viable claim for breach of the implied covenant of good faith and fair dealing. (Doc. No. 4 at 1.) In response, Plaintiff has conceded any claims arising out of the TCPA in his Response (Doc. No. 12 at 5); therefore, those claims are dismissed and the Court need not consider the related arguments.

1. <u>Statutory Claims</u>

Defendant first argues that the Court should dismiss all of Plaintiff's claims because the factual allegations in the Complaint fail to state any plausible claim for relief. (Doc. No. 5 at 5.) Plaintiff responds that this case was improperly removed and therefore Tennessee's state-law pleading standard should apply, which is more liberal than the federal standard in *Twombly*. (*Id.* at 1.) However, the Court has already determined that this action is properly before it pursuant to diversity jurisdiction. When a court exercises diversity jurisdiction, it must apply federal procedural law. *City of Cleveland v. Ameriquest Mortg. Sec., Inc.*, 615 F.3d 496, 502 (6th Cir. 2010).

Plaintiff argues that even if the *Twombly* standard applies, "[t]here are sufficient facts pled which when considered with the statutory violations, the Court could find that Plaintiff has stated a plausible claim for relief." (Doc. No. 12 at 2.) However, Plaintiff does not specify what those facts are, and the Court simply finds no facts alleged in the Complaint in support of Plaintiff's claims for violations of the enumerated Tennessee statutes. The Complaint has therefore failed to state a plausible claim for relief under those provisions.

Nevertheless, construing the Complaint in Plaintiff's favor, the Court gleans one essential allegation of wrongdoing: that Defendant did not accept payment from Plaintiff, made at Defendant's branch office, which would have otherwise cured the default on the mortgage loans and prevented foreclosure under the terms of the Note. However, Defendant argues that Plaintiff's payment did not constitute effective tender of payment under the UCC. (Doc. No. 5 at 6.) Defendant concludes that Plaintiff's claim is therefore barred because Defendant did not commit a wrongful act by refusing to accept Plaintiff's payment. (*Id.*)

The UCC provides that "an instrument is payable at the place of payment stated in the instrument." Tenn. Code Ann. § 47-3-111. The UCC further states that "[a] branch or separate office of a bank is a separate bank for the purpose of . . . determining the place at or to which action may be taken." *Id.* § 47-4-107. According to the Note, Plaintiff was required to make monthly payments to a post-office box in Baltimore, Maryland, "or at a different place if required by the Note Holder." (Doc. No. 4-1 ¶ 3(A).) Defendant argues that Plaintiff did not make his payment to the place designated by the Note related to his mortgage, and that the payment did not, therefore, constitute effective tender of payment under the UCC. (Doc. No. 5 at 6.) Defendant cites *U.S. Bank National Association v. Whitney*, 81 P.3d 135 (Wash. Ct. App. 2003), in support of this argument. (Doc. No. 5 at 6.) Examining a similar payment provision under the same UCC provisions, the Washington Court of Appeals held in *Whitney* that a borrower's payment at a non-designated bank branch did not constitute effective tender of payment. 81 P.3d at 140. The court stated that "[a] separate branch or office of a bank is a different bank for the purpose of place of payment." *Id.*

Plaintiff argues that Defendant should be estopped from refusing to accept payment to cure a delinquency because Defendant had previously accepted all mortgage payments at their branch location. (Doc. No. 12 at 3.) Plaintiff further argues that under the UCC, payment may be made at places other than those designated on the instrument if the holder has more than one location. (*Id.* at 4.) Plaintiff points to a subsequent portion of § 47-3-111, which states that "[i]f a drawee or maker has more than one (1) place of business the place of payment is any place of business of the drawee or maker chosen by the person entitled to enforce the instrument." Plaintiff also cites a comment to § 47-4-107, which states:

8

> A rule with respect to the status of a branch of separate office of a bank as a part of any statute on bank collections is highly desirable if not absolutely necessary. However, practices in the operations of branches and separate offices vary substantially in the different states and it has not been possible to find any single rule that is logically correct, fair in all situations and workable under all different types of practices. The decision not to draft the section with greater specificity leaves to the courts the resolution of the issues arising under this section on the basis of the facts of each case.

Finally, Plaintiff argues that *Whitney* is only persuasive authority, and that the facts of this case are distinguishable from those in *Whitney*. (Doc. No. 12 at 4.)

The Court finds Plaintiff's arguments unpersuasive in light of the plain language of § 47-3-111, which clearly states that payment must be remitted to the location stated on the instrument being enforced, and § 47-4-107, which states that branches of a bank are separate banks for the purpose of taking action on instruments. Plaintiff has not contested the applicability of these provisions to his mortgage loan documents, but rather attempts to create ambiguity in their language. The relationship between the portion of § 47-3-111 regarding multiple places of business and § 47-4-107 is not immediately clear to the Court. Their interplay is irrelevant, however, because the Complaint does not allege that Defendant chose any other place of business as the place of payment for the loan, as required by § 47-3-111 in order to validate a place of payment other than that specified in the instrument.

Although Plaintiff now argues that Defendant impliedly chose a Tennessee branch as a place of payment by accepting previous payments there, this fact is not alleged in the Complaint. Plaintiff's estoppel argument also fails for this reason. Additionally, even if Plaintiff had alleged Defendant's prior acceptance of payments at a local branch in his Complaint, Defendant points out that the Deed of Trust contains a provision that makes the allegation irrelevant. (Doc. No. 15 at 4.) The Deed of Trust provides that the lender's failure to exercise any right is not a waiver of

9

and does not preclude the exercise of any right. (Doc. No. 4-2 at 9.) Thus, although Defendant may have waived the place of payment requirement previously, it would not be precluded from exercising its right to enforce that requirement in the future.

Further, it is unclear to the Court what "greater specificity" in § 47-4-107 would change the outcome of the current Motion, as Plaintiff seems to suggest through the cited comment. The language of § 47-4-107 is clear, and at least one other court has specifically applied it to payments made on an instrument. *See Whitney*, 81 P.3d at 140. Although the Court acknowledges that *Whitney* is only persuasive authority, the Court finds it instructive in the absence of Tennessee state law interpreting these provisions. There are factual distinctions between *Whitney* and the current case; however, these distinctions are irrelevant to the issue of effective tender of payment under the UCC. The Washington Court of Appeals analyzed this issue in isolation – considering only the facts that the instrument in question stated a place of payment and the debtor made payment to a different place – and found that the payment did not constitute effective tender under identical UCC provisions. 81 P.3d at 140. The Court finds no reason to make a contrary finding to that of the Washington Court of Appeals. Additionally, even if the Court did not strictly apply § 47-4-107, the plain language of § 47-3-111 demands the same outcome, because it requires that payment be made at the place designated on the Note. Plaintiff has therefore not stated a claim upon which relief can be granted for wrongful refusal of a tendered payment.

　　2. Implied Covenant of Good Faith and Fair Dealing

Defendant also argues that Plaintiff's Complaint does not state a valid claim for violation of the implied covenant of good faith and fair dealing. (Doc. No. 5 at 10.) "Parties to a contract owe each other a duty of good faith and fair dealing as it pertains to the performance of a

10

contract." *Barnes & Robinson Co., Inc. v. OneSource Facility Servs., Inc.*, 195 S.W.3d 637, 642 (Tenn. Ct. App. 2006) (citing *Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 686 (Tenn. 1996)). The purposes of the implied-in-law covenant are (1) to honor the parties' reasonable expectations, and (2) to protect their right to receive the benefits of the agreement into which they entered. *Id.* at 642-43 (citations omitted). The covenant "does not, however, create new contractual rights or obligations, nor can it be used to circumvent or alter the specific terms of the parties' agreement." *Id.* at 643. Further, it is not a standalone claim, but rather part of an overall breach of contract claim. *Jones v. LeMoyne-Owen Coll.*, 308 S.W.3d 894, 907 (Tenn. Ct. App. 2009) (citing *Lyons v. Farmers Ins. Exch.*, 26 S.W.3d 888, 894 (Tenn. Ct. App. 2000)).

Although Plaintiff's Complaint does not explicitly assert a breach of contract claim, the Court assumes that Plaintiff's bad faith claim is based on Defendant's failure to accept Plaintiff's payment that would have prevented foreclosure under the terms of the mortgage documents. Plaintiff's Response argues that "[t]he obligation of the bank to accept payment consistent with Section 19 of the Deed of Trust is a duty of good faith and fair dealing and a breach of that duty is a breach of contract." (Doc. No. 12 at 5.) Plaintiff cites *Dick Broadcasting Co., Inc. of Tennessee v. Oak Ridge FM, Inc.*, in which the Tennessee Court of Appeals held that a party had breached a contract by withholding consent to assignment of the contract without a good faith and commercially reasonable basis. 2011 WL 4954199, at *11 (Tenn. Ct. App. Oct. 19, 2011). The court held that the party's obligation to provide such a basis arose from the duty of good faith and fair dealing, and that a breach of the obligation constituted a breach of contract. *Id.* Plaintiff argues that Defendant's obligation to accept his payment and stop foreclosure similarly arises from the duty of good faith and fair dealing, and that Defendant's alleged breach of that obligation constitutes a breach of contract. (Doc. No. 12 at 5.)

11

The Court declines to read such an interpretation into Tennessee law, because Defendant did not have an obligation to accept Plaintiff's payment according to the facts alleged. Plaintiff had a contractual obligation to make payments to a certain place, which he did not meet. To conclude that Defendant had the obligation that Plaintiff asserts would be to add an additional term to the parties' contract that Defendant was required to accept payment to cure a default under these circumstances. It is possible that Plaintiff had a legitimate, reasonable expectation that his payments would be accepted at the branch because he had made payments there before. Tennessee courts analyze the reasonable expectations of parties in determining whether the duty of good faith has been met. *See, e.g.*, *Wallace*, 938 S.W.2d at 687. Again, however, Defendant's prior acceptance of payments at the branch and any such reasonable expectation based upon that acceptance is not alleged in the Complaint. Plaintiff has not sufficiently alleged a viable breach of contract claim or a violation of the covenant of good faith and fair dealing on which relief can be granted.

As Plaintiff has failed to allege any plausible claims for relief, the Complaint must be dismissed, and Defendant's Motion is **GRANTED**.

3. Leave to Amend Complaint

At the conclusion of his Response, Plaintiff moves for leave to amend his Complaint should the Court find it to be deficient, because the Complaint was filed in Tennessee state court, where the pleading requirements are "arguably less stringent." (Doc. No. 12 at 6.) Under Federal Rule of Civil Procedure 15(a), a party may amend a pleading as a matter of course within twenty-one days after service of a motion under Rule 12(b), or with leave of the court after twenty-one days. Rule 15(a)(2) states that a court "should freely give leave when justice so requires." However, the party requesting leave "'must act with due diligence,'" *Smith v.*

*Caterpillar, Inc.*, 304 F. App'x 391, 395 (6th Cir. 2008) (quoting *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000)), and the standards for granting leave to amend pleadings after a motion to dismiss is decided are higher.

While defendants are "'entitled to a review of the complaint as filed pursuant to Rule 12(b)(6),'" plaintiffs are "'not entitled to an advisory opinion from the [c]ourt informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies.'" *La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010) (quoting *Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776, 785 (6th Cir. 2000)). Under Rule 15(a), Plaintiff had leave to file an amended complaint for twenty-one days after being notified of Defendant's challenges to his Complaint through Defendant's Motion to Dismiss, but failed to do so.

The Sixth Circuit strongly disfavors requesting leave to amend pleadings in responsive briefs to motions to dismiss, as opposed to filing a separate, detailed motion to amend. *See id.* ("[A] bare request in an opposition to a motion to dismiss – without any indication of the particular grounds on which amendment is sought . . . does not constitute a motion within the contemplation of Rule 15(a)."); *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 699 (6th Cir. 2004) (same); *Begala*, 214 F.3d at 785 ("What plaintiffs may have stated, almost as an aside to the district court in a memorandum in opposition to the defendant's motion to dismiss is also not a motion to amend.").

Further, requests for leave to amend pleadings under Rule 15(a) are governed by Rule 7(b), which requires that a motion "state with particularity the grounds for seeking" the requested relief. *Evans v. Pearson Enters., Inc.*, 434 F.3d 839 (6th Cir. 2006). A request without supporting grounds or a proposed amended complaint does not meet the particularity requirement. *Id.* (affirming district court's denials of requests for leave to amend complaint

13

because the plaintiff failed to state the grounds for relief with particularity and the requests were not "clearly presented as a distinct motion"). Under Sixth Circuit precedent, the Court therefore finds that it would not be appropriate to grant Plaintiff leave to amend his Complaint following the Court's determination that the Complaint fails to state a claim upon which relief can be granted under Rule 12(b)(6).

**IV. CONCLUSION**

For the reasons stated above, Plaintiff's Motion to Remand is **DENIED**, Defendant's Motion to Dismiss is **GRANTED**, and the case is **DISMISSED**.

It is so ORDERED.

Entered this ___29th_____ day of December, 2011.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT